# Ellis *v.* Martin.

*Trial of Right of Property in Bales of Cotton, between Land-lord as Plaintiff in Attachment, and Mortgagee for Advances.*

1. *Sufficiency of mortgage, in description of property conveyed.* —A mortgage, or instrument purporting to create a statutory lien for advances to make a crop, which describes the property as "my entire crop of cotton and corn of the present year," without any other descriptive words, is not void for uncertainty and indefiniteness, but may be rendered sufficiently certain and definite by extrinsic proof.

2. *Landlord's statutory lien for rent.* —A landlord's lien on the crop of his tenant, for the rent of the leased premises, is created by the statute (Code of 1876, § 3467), and not by the issue or levy of an attachment, which is only given as a remedy for enforcing that lien.

3. *Attachment for rent.* —An attachment for rent, at the suit of the landlord, should be issued against the tenant's crop only, and not against his estate generally; but, if issued against his estate generally, though it would be abated on plea, it is only irregular, and not absolutely void, and may properly be levied on his crop.

4. *What defects are not available to claimant.* —On the trial of a statutory claim suit, the claimant can not take advantage of defects in the attachment, or other process, which do not render it absolutely void.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. W. S. MUDD.

The appellant in this case, Richard F. Ellis, sued out an attachment on the 5th January, 1876, against E. C. Ellis, his son, claiming the sum of $153 as due to him for the rent of land, known as the "Sipsey place," for the year 1875; the attachment being sued out on the ground "that the said E. C. Ellis, the tenant of the said R. F. Ellis, has removed a portion of the crop from the said tract of land." The attachment was issued by the clerk of the Circuit Court, and commanded the sheriff "to attach so much of the estate of the said E. C. Ellis as will be sufficient to satisfy the said debt and costs." It was levied by the sheriff on three bales of cotton, to which a claim was interposed by Caswell Martin, the appellee, who made affidavit of his ownership, and gave bond, as required by the statute; and an issue was thereupon made up, under the direction of the court, between him and the plaintiff in attachment, to try the right of property in the cotton. On the trial of this issue, as the bill of exceptions states, "the following proceedings were had":

"The plaintiff introduced several witnesses, who proved that he rented to his son, said E. C. Ellis, for and during the year

1875, a small tract of land in said county, known as the 'Sipsey place'; that the said E. C. Ellis, on the 31st December, 1874, executed the following note for the rent," setting out a note for $153, dated the 31st December, 1874, and payable on or before the 1st January, 1876 : "that seven bales of cotton, more or less, were raised by said defendant on said farm during the year 1875, three of which bales are the bales now in controversy, on which the attachment in this case was levied, and which were claimed by said Caswell Martin; and the proof tended to show, also, that all of said seven bales of cotton were removed from the premises, to the gin-house of one Taylor, to be by him ginned and baled, in December, 1875. The claimant offered in evidence the following mortgage, or lien-note, and proved its execution by said E. C. Ellis on the 27th May, 1875, and that it was intended to cover the crops of cotton and corn raised by him on the 'Sipsey place' during the year 1875, which include the three bales of cotton here in controversy, and in fact the whole of the said seven bales. This proof was made, and said instrument introduced, against the objection of said plaintiff, who objected thereto on the ground that said instrument contained no sufficiently certain description of the property or crop alleged to be conveyed or described, and was void for uncertainty as against the plaintiff, and could not be lawfully explained by parol evidence. The court overruled the objection, and admitted said deed as evidence, with proof that the cotton was part of the crop raised by said E. C. Ellis on said place in 1875; to which ruling plaintiff excepted."

The said mortgage was in these words: "The State of Alabama, Pickens county: On the 1st day of December next, I promise to pay C. Martin, or order, the sum of five hundred dollars, cash advanced by him to me, and obtained by me this day *bona fide*, for the purpose of making a crop the present year; and without such advance it would not be in my power to procure the necessary teams, provisions, and farming implements to make such crop; and this note is given as a lien on my said crop, under the statute, with power to take possession of and sell the same when said debt becomes due, on account thereof, at such time and place, and on such terms as he may deem best, if I fail to pay the same when due. And I obligate myself to deliver to said C. Martin, or order, at such place as he may designate, my entire crop of cotton and corn of the present year, as soon as ready for market; to be by him sold, in such manner as he may deem best, on account of said rent. Witness my hand and seal, this 27th May, 1875." This instrument

was signed by said E. C. Ellis, attested by two subscribing witnesses, and admitted to record in the office of the probate judge of Tuskaloosa, on the 9th June, 1875, on proof by one of the subscribing witnesses.

The bill of exceptions proceeds as follows: "The consideration of said obligation was mostly, to-wit, $350 of the $500, for advances made said E. C. Ellis to enable him to cultivate said crop during the year 1875; and the balance of said consideration, to-wit, $150, was an antecedent debt of the year previous. The proof was conflicting, as to whether or not said E. C. Ellis had told said claimant, at or before the time said instrument was executed, that plaintiff was to charge him no rent on said place; but it was proved that said claimant, when he took said mortgage or instrument, and also when he seized the cotton under it, knew that said E. C. Ellis did not own said place which he cultivated during the year 1875, but that said plaintiff owned it. It was shown in evidence, also, that said claimant sent to Taylor's ginhouse, and took possession of said seven bales of cotton, under said mortgage or lien-note, without the consent of plaintiff or defendant; and the proof showed that said cotton averaged nearly five hundred pounds per bale, and was worth eleven to twelve cents per pound."

"This was all the evidence; whereupon, the court charged the jury, among other things, as follows: '1. That an attachment, sued out by a landlord for rent of land, may be levied on the crop raised on the rented premises, whether in the possession of the tenant, or any one holding it in his right, or in the possession of a purchaser from him with notice of the landlord's lien.' '2. But, in such case, the writ of attachment must be to attach so much of the *crops* raised or made on the rented land, and not so much of the *estate of the defendant* as will be of value sufficient to satisfy the debt and costs: that an attachment, like the one in this case, issued against the estate of the defendant, even though the same be levied on a portion of the crops raised on the rented land during the current year, and though the affidavit be correctly framed, creates no such lien on such crop or crops as would have priority over the mortgage lien of the claimant.' '3. That if the jury believe the said mortgage was executed by E. C. Ellis to the claimant on the 27th May, 1875, and was intended to include and did include the crops raised by said E. C. Ellis on the Sipsey place in the year 1875; even though they should further believe that the debt sued for was due for rent of said place by defendant as plaintiff's tenant during said year, and that the cotton in controversy was raised on said rented premises during said year, and so

[Ellis v. Martin.]

known to said claimant; still, the plaintiff, though a land-lord, would have no such claim or lien, under the present writ of attachment, as would be superior or paramount to the claim or lien of said claimant under his mortgage, but that the lien of the mortgage would be superior to the lien of the attachment, or any claim thereunder in this case.' "

The plaintiff excepted to the second and third charges; and he now assigns them as error, with the rulings of the court on the evidence, to which, as above stated, he reserved exceptions.

S. A. M. Wood, and H. M. Somerville, for appellant.— 1. It may be conceded that the usual and more proper form of an attachment, in such a case as this, would direct a levy to be made of the crop raised on the rented premises, and not of the defendant's estate generally. But the mistake in form is a mere clerical misprision—an irregularity, of which the defendant in attachment could only take advantage by plea in abatement, or motion to quash. He was the only person who could be damaged by the exercise of the enlarged power which the writ conferred on the sheriff, and he has waived the objection. There was nothing wrong or irregular in the levy of the attachment, and the claimant can not avail himself of irregularities which the defendant in the attach-ment has waived.—Drake on Attachments, § 697; 1 Brick-ell's Digest, 165, § 155, and cases there cited; *Pace v. Lee,* 49 Ala. 571; *Ware v. Todd,* 1 Ala. 199; *Blair v. Miller,* 42 Ala. 308; *Bank v. Andrews,* 8 Porter, 404. Besides, a land-lord's lien is created by the statute, and not by the levy of an attachment; and an attachment is only given as a rem-edy, or means of enforcing the lien.—*Westmoreland v. Foster,* at the present term.

2. The claimant's mortgage purports to convey the grantor's "entire crop of cotton and corn of the present year"; but it entirely fails to indicate where the crop was to be raised, to whom the land belonged, in what county it was situated, or whether it contained ten acres or a thousand. As between the immediate parties, where no intervening rights have accrued to third persons, the defect may be sus-ceptible of explanation, as a patent ambiguity, or simple in-accuracy of description; but, as against attaching creditors, or purchasers for value, the instrument itself ought to contain descriptive words sufficiently certain and definite to identify the property, else it is void for uncertainty.—*Jackson v. Rose-velt,* 13 John. 96; *Nolte v. Libbert,* 34 Indiana, 163.

Van Hoose & Powell, *contra.*—1. The attachment should

have been issued against the crop raised on the rented lands, and not against the defendant's estate generally.— *Hawkins v. Gill*, 6 Ala. 620. This defect is not a mere irregularity, or clerical misprision : it is a defect in substance, and renders the attachment void, as an attachment for rent.— Drake on Attachments, § 4 *a*. The act of the clerk, in issuing an attachment, is judicial, and not ministerial.—*Ex parte Harris*, 52 Ala. 91 ; *Matthews v. Sands & Co.*, 29 Ala. 138 ; 27 Ala. 362.

2. If the plaintiff's attachment was void, there can be no doubt of the claimant's right to take advantage of the defect. The cases cited for appellant, as to defects of form which the defendant in attachment must plead in abatement, and of which the claimant can not take advantage, were ordinary attachments, sued out under the general law; while this is a special proceeding, in which the statute must be strictly pursued, and to which the rules governing ordinary attachments do not apply. The claimant could not litigate the plaintiff's right to a general attachment, or to a judgment against the defendant; but, as a privy in estate and interest, having possession of the property attached, he may question the plaintiff's right to seize and condemn it. As between them, the question is, which has the superior title— the claimant, as a mortgagee in possession after the law-day, or the plaintiff as a general attaching creditor.—*Collingsworth v. Horn*, 4 Stew. & P. 249.

3. As to the sufficiency of the claimant's mortgage in the description of the property, see *Gafford v. Stearns*, at the last term.

BRICKELL, C. J.—The description of the thing conveyed in the mortgage is very general and indefinite; but it is capable of being rendered certain, by evidence showing the lands cultivated by the mortgagor in 1875, and the quantity of corn and cotton raised thereon. Generality and indefiniteness of description will not avoid a conveyance. It is uncertainty that will not be removed when the conveyance is read in the light of the circumstances surrounding the parties at the time it was entered into, and their manifest design is considered. Nor can it be admitted that the necessary effect of the generality of the description is to mislead and deceive strangers dealing with the mortgagor. If purchasing from him corn or cotton, inquiry is excited, and they are bound to ascertain, and must at their peril ascertain, whether it was raised by the mortgagor in 1875, or whether it was in some other manner acquired.

The lien of the landlord for the payment of rent, is an in-

ident of the tenancy, attached by law. It is not created by, or dependent on, the issue and levy of an attachment on the crops. This is but the mode of enforcing the lien at law. The attachment should direct a levy on the crops only, and should not be an authority to the officer executing it, to levy on the estate generally of the tenant.—*Hawkins v. Gill*, 6 Ala. 620. If issued against the estate generally, it would be abated on plea, and a levy on other property than the crops grown on the rented premises would be set aside. But it is not void—it is merely irregular; and until abated, if levied on the crops, is capable of enforcing the lien for rent. A claimant, in a trial of the right of property, can not take advantage of irregularities in the process levied, which do not render it void.

The instructions of the Circuit Court were inconsistent with these views; and its judgment is reversed, and the cause remanded.